UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

BRUCE BRANTLEY, PLAINTIFF

v. CIVIL ACTION NO. 3:10-CV-30-S

LARRY HARRIS, DEFENDANT

**MEMORANDUM OPINION**

Bruce Brantley brings this action against Larry Harris, a former business associate who allegedly talked Brantley into making a series of investments in International Tractor Co., Inc. ("ITC"), purportedly a supplier of heavy construction equipment. The investments turned out to be bogus, and Brantley lost substantially all of his $1.6 million in what he calls a Ponzi scheme. Brantley seeks to hold Harris alone accountable for his losses, and has asserted causes of action for violations of Kentucky's Blue Sky Law, KRS 292.320 and 292.480, common-law fraud, and negligent misrepresentation. Harris has moved to dismiss for failure to state a claim and for failure to join several indispensable parties. Fed. R. Civ. P. 12(b)(6), 12(b)(7).

**I**

We begin with the procedural argument. A person is indispensable under Rule 19 if he meets the elements of a three-step test. "First, the court must determine whether the person or entity is a necessary party under Rule 19(a). . . . Second, if the person or entity is a necessary party, the court must then decide if joinder of that person or entity will deprive the court of subject matter jurisdiction. . . . Third, if joinder is not feasible because it will eliminate the court's ability to hear the case, the court must analyze the Rule 19(b) factors to determine whether the court should in equity and good conscience dismiss the case because the absentee is indispensable." *Glancy v.*

*Taubman Ctrs., Inc.*, 373 F.3d 656, 666 (6th Cir. 2004) (citations and internal quotation marks omitted). Harris argues that there ought to be five additional parties to this action: Webb Ventures, LLC (a Kentucky firm that had business dealings with ITC) and its members, Stephen Webb and Thomas Edelen; and ITC and its President Eilat Lev.

The first inquiry is whether any of the five suggested parties is necessary. Rule 19(a)(1) states that a person is a required party if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Harris argues that Webb Ventures and its members are indispensable here because (he says) Webb Ventures is the real guilty party in that it (and not Harris) provided the plaintiff with the faulty information that led to his bad investment. According to Harris, this means that absent Webb Ventures, Webb, and Edelen, the court "cannot accord complete relief among existing parties." Similarly, ITC and Lev must in Harris's view be joined because they are actually to blame for taking Brantley's money and running.

All this just amounts to an argument that Harris is not liable for Brantley's loss: it seeks a de facto adjudication on the merits. The complaint alleges various misrepresentations made by Harris, and seeks to hold him accountable for them. Whatever the merits of those allegations, adding new charges would not affect the outcome of the dispute presently before us. None of the five "indispensable" parties is actually necessary to the action, and Rule 12(b)(7) relief is unwarranted.

**II**

Turning to the Rule 12(b)(6) motion: A complaint "only survives a motion to dismiss if it 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009) (*quoting Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)). This raises the bar from where *Conley v. Gibson*, 355 U.S. 41 (1957) had left it: whereas under *Conley* a court was to dismiss a facially well-pleaded complaint only if its contents were so outlandish as to be utterly incapable of proof, *Iqbal* (along with its predecessor, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)) advises us to toss out a case unless the allegations meet some minimum standard of plausibility. *Courie*, 577 U.S. at 629-30. While we must take the complaint's factual allegations as true in making this assessment, we need not accept the truth of legal conclusions or draw unwarranted factual inferences. *DirectTV, Inc. v. Treesh*, 487 F.3d 271, 476 (6th Cir. 2007); *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000). We address the complaint's three substantive counts in turn.

**A**

Count I alleges that Harris violated Kentucky's Blue Sky Law, KRS 292.320 and 292.480.

**1**

The Blue Sky Law, by its terms, applies only to securities. This term is in turn defined as:

> any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, life settlement investment, voting-trust certificate, certificate of deposit for a security; fractional undivided interest in oil, gas, or other mineral rights; or, in general, any interest or instrument commonly known as a 'security,' or any certificate of interest in or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

KRS 292.310(18). This has been boiled down to a four-prong test requiring: (1) an investment of money; (2) a common scheme or enterprise; (3) a reasonable expectation of profits; and (4) that the profits are to be derived from the entrepreneurial or managerial efforts of others. *Com. ex rel. Com'r of Dept. of Financial Institutions of Com. v. Greenleaf Marketing Corp.*, 2007 WL 3406766 (Ky. App. Nov. 16, 2007) (*citing SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946); *Scholarship Counselors, Inc. v. Waddle*, 507 S.W.2d 138, 141 (Ky. 1974)). Harris attacks the "common scheme" element of this test.

For a finding of a common venture, the Sixth Circuit[1] requires "horizontal commonality," meaning the "sharing or pooling of funds in which fortunes of the individual investors are inextricably intertwined by contractual and financial arrangement." *Cooper v. King*, 1997 U.S. App. LEXIS 11296, at *5 (6th Cir. May 9, 1997) (*citing Union Planters Nat'l Bank v. Commercial Credit Business Loans, Inc.*, 651 F.2d 1174, 1183 (6th Cir. 1981)). Harris argues that the complaint does not allege any pooling of funds, but that Brantley has instead alleged that his money was earmarked for specific purchases and was not combined with the investments of others. The precise nature of the contract into which Brantley entered is not clear from the pleadings, and no written contract bearing the plaintiff's name is on file. Viewing what has been alleged in the light most favorable to the plaintiff, however, the court is of opinion that he has alleged a securities contract. Brantley was allegedly induced to invest on the basis that he would "share in the profits" from ITC's transactions (Compl. ¶¶ 8, 10), and that "other investors" also put money into the firm (*id.* at ¶ 9). At this stage, that is enough to think that Brantley's claim is "plausible"—though of course as the litigation proceeds and the evidentiary bar climbs the plaintiff will have to actually present evidence of the

---

[1] The Kentucky courts have not apparently addressed this issue.

nature of the contracts into which he entered in order to show that they were securities within the meaning of Kentucky law.²

## 2

Harris next argues that Brantley has failed to allege sufficient facts to make out a Blue Sky Law violation. KRS 292.320 prohibits fraudulent securities practices, but does not itself contain a civil enforcement mechanism. As a technical matter, it can only be invoked as the basis of a private cause of action under KRS 292.480, which provides for civil liability for violations of other sections of the Blue Sky Law. *See Foster v. Ky. Farm Bureau Mut. Ins. Co.*, 189 S.W.3d 553, 557 (Ky. 2006) ("[W]here a statute both declares the unlawful act and specifies the civil remedy available, the aggrieved party is limited to the remedy provided by the statute." (*citing Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985))); *Stifel, Nicolaus & Co., Inc. v. May*, No. 3:02-CV-688-S, slip op. at 5 (W.D. Ky. Aug. 19, 2003) ("[N]o private right of action may be implied under § 292.320." (*citing Grzyb*, 700 S.W.2d at 401)).

KRS 292.320 is "virtually identical" to the federal securities fraud laws, and requires proof of six elements: (1) misrepresentation or omission of a material fact; (2) *scienter*; (3) a connection with the purchase or sale of a security; (4) reasonable reliance (or transaction causation); (5) economic loss; and (6) loss causation. *Brown v. Earthboard Sports USA, Inc.*, 481 F. 3d 901, 917 (6th Cir. 2007) (*citing Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005)). The

---

² The court offers the following prophylactic suggestion to plaintiff's counsel: to argue that the investments were securities because they turned out to be part of a Ponzi scheme is self-defeating. As reflected in the Blue Sky Law's lengthy definition, the question to be asked is whether the contract into which the plaintiff entered was a security, not what his counterparties did with his money once they got their hands on it. It is immaterial (with regard to the question whether his investment was a "security") that Brantley's funds were actually commingled with those of other investors if he did not agree to that commingling. Brantley does not claim that he voluntarily contracted to invest in a Ponzi scheme, so he cannot claim that the workings of that scheme were the terms of his contract. And obviously if he *had* for some reason knowingly signed up to be the victim of a Ponzi scheme he could not have had a reasonable expectation of profit.

cause of action is subject to the heightened pleading requirements imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4. *Booth v. Verity, Inc.*, 124 F. Supp. 2d 452, 459-61 (W.D. Ky. 2000). That statute imposes a number of requirements on securities-fraud plaintiffs, and mandates dismissal should the requirements not be met. 15 U.S.C. § 78u-4(b)(3)(A). First, "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). We reproduce below Brantley's enumeration (in his response brief) of seven alleged false statements:

> (1) That ITC was financially stable and fully capable of performing under the equipment transactions in which Harris induced Brantley to invest (Complaint ¶ 7);
> (2) That Brantley would receive a return on his investment in the form of interest and a share of the profit earned by ITC on the transactions invested in by Brantley (Complaint ¶¶ 8, 10);
> (3) That the funds solicited from Brantley would be used to finance the purchase and subsequent resale of specific equipment, which ITC and Harris listed in documentation provided to Brantley (Complaint ¶ 10);
> (4) That ITC had existing agreements in place to sell equipment purchased with the solicited investment funds to specific buyers (Complaint ¶ 11);
> (5) That the equipment purchased with the solicited investment funds would not be shipped or go "off boat" until ITC was paid by the buyers (Complaint ¶ 12);
> (6) That there was no risk of Brantley losing his investment since it was secured by equipment purchased with the funds (Complaint ¶¶ 11, 12); and
> (7) That Harris did not inform Brantley that he was receiving a cut or percentage of the money invested in ITC by Brantley *and* by other investors (Complaint ¶ 9).

(Resp. 9.) The complaint does not specify any reason that statements (1), (2), (4), (5), or (6) were false when made. The only passage of the complaint that Brantley can point to as evidencing their falsity is ¶ 18, which reads:

> Harris' statements to Brantley regarding the ITC equipment transaction, . . . were untrue as to material facts and omitted material facts necessary in order to make the statements made not misleading. Further, in the exercise of ordinary care, Harris should have known his statements to Brantley were misleading.

This is a "formulaic recitation of the elements of [the plaintiff's] cause of action," *Twombly*, 550 U.S. at 555; it does not even begin to meet the PSLRA's specificity requirements, which are more rigorous than the Fed. R. Civ. P. 8 standard addressed in *Twombley*. Plaintiff's Blue Sky Law claims based on those five alleged statements must be dismissed pursuant to the PSLRA.

Statement (3) clears this bar. It alleges that Harris told Brantley that his money would be used to purchase specific equipment, while paragraph 9 of the complaint alleges that some portion of those funds was actually used to line Harris's pocket. "Statement" (7) (i.e. paragraph 9; it's really an omission) is the other side of statement (3)'s coin: the two allegations say the same thing from different directions. Brantley cannot recover on the theory that Harris lied about where his investment was going and also recover a second time because Harris did not tell him that the money was going into Harris's own pocket. So statement (7) is not independently actionable, and only statement (3) will survive dismissal.

A second requirement imposed by the PSLRA is a heightened showing of *scienter*: "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2); *Booth*, 124 F.Supp. 2d at 461. The plaintiff is required to plead facts raising a strong inference of "an act so highly unreasonable and such an extreme departure from the standard of ordinary care as to present a danger of misleading the plaintiff to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Booth*, 124 F.Supp. 2d at 461-62 *(quoting In re MicroStrategy Inc. Secs. Litig.*, 115 F. Supp. 2d 620, 633 (E.D. Va. 2000)); *Hoffman v. Estabrook & Co.*, 587 F.2d 509, 517 (1st Cir. 1978). Whether the pleaded facts give rise to a "strong inference" must not be assessed "in a vacuum";

courts are required to take into account "plausible opposing inferences." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). A complaint will thus survive dismissal "only if a reasonable person would deem the inference of *scienter* cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324. Here we think the allegation that Harris was pocketing some portion of Brantley's money is sufficient to sustain an inference that he knew that at least some of the money would not be going towards buying construction equipment.

Accordingly the claims under KRS 292.320 will be dismissed without prejudice for failure to meet the PSLRA's pleading requirements, with the exception of statement (3). *See Belizan v. Hershon*, 434 F.3d 579, 583-84 (D.C. Cir. 2006) (holding that the PSLRA does not mandate dismissal with prejudice where additional allegations could cure the complaint's deficiencies).

**3**

KRS 292.480(1) provides a cause of action of its own, even absent a violation of another provision of the Blue Sky Law.[3] *See Booth*, 124 F. Supp. 2d. At 463-64. Proof of a claim under that section requires proof of four elements. The defendant must have (1) offered or sold a security (2) by means of an untrue statement or omission concerning a material fact, (3) of which the buyer did not know. The offeror or seller has a defense (on which he bears the burden of proof) if he did not know and in the exercise of reasonable care could not have known of the untruth or omission. This

---

[3] KRS 292.480(1) reads, in relevant part:
Any person, who offers or sells a security in violation of this chapter or of any rules or orders promulgated hereunder or offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made in the light of the circumstances under which they are made not misleading (the buyer not knowing of the untruth or omission) and who does not sustain the burden of proof that he did not know and in the exercise of reasonable care could not have known of the untruth or omission is liable to the person buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at the legal rate from the date of payment costs and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security.

cause of action parallels Section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l(a)(2), and requires no proof of fraudulent mental state; consequently neither the PSLRA nor Fed. R. Civ. P. 9(b) applies. *Booth*, 124 F. Supp. 2d at 463.

Harris makes two arguments against Brantley's invocation of § 480. The first is procedural: the complaint does not actually state that Brantley is asserting an independent claim under § 480. It claims only that Brantley is entitled to judgment "pursuant to KRS 292.480 for all damages incurred as a direct and proximate result of Harris' violation of KRS 292.320." (Compl. ¶ 24.) While it is technically true that this citation of § 480 does not expressly invoke it as a separate cause of action, the Civil Rules require the court to construe pleadings "so as to do justice." Fed. R. Civ. P. 8(e). Therefore if the complaint contains sufficient facts to make out the cause of action we will allow the plaintiff to go forward with it even though he did not actually invoke it by name.

Harris's second argument is that he did not personally offer or sell any securities to Brantley. We first note that because KRS 292.320 is enforceable only through KRS 292.480, this argument would apply to both Blue Sky Law causes of action if it had merit. However as we have noted § 480 parallels the federal securities laws, and the Supreme Court has interpreted identical language to that in the Kentucky statute as including "brokers and others who solicit offers to purchase securities." *Pinter v. Dahl*, 486 U.S. 622, 646 (1988). Harris's alleged activities thus fall within the meaning of the statute. He has not otherwise challenged the sufficiency of the § 480 claim, which survives dismissal in full (except to the extent that statements (3) and (7) assert the same claim).

**B**

Count II alleges common-law fraudulent misrepresentation. In Kentucky, this requires proof of six elements: (1) that the declarant (the defendant or its agent) made a material representation to

the plaintiff; (2) that this representation was false; (3) that the declarant knew the representation was false or made it with reckless disregard for its truth or falsity; (4) that the declarant intended to induce the plaintiff to act upon the misrepresentation; (5) that the plaintiff reasonably relied upon the misrepresentation; and (6) that the misrepresentation caused injury to the plaintiff. *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009) (citations omitted). The misrepresentation in question "must relate to a past or present material fact." *Id.* A statement of opinion or prediction about investment prospects or future sales performance generally cannot form the basis of a fraud claim; "'forward-looking recommendations and opinions are not actionable . . . merely because they are misguided, imprudent or overly optimistic.'" *Id.* (*quoting In re Salomon Analyst AT&T Litig.*, 350 F.Supp.2d 455, 467 (S.D.N.Y. 2004)). Kentucky recognizes an exception to this rule against predictions where the proffered opinion "either incorporates falsified past or present facts or is so contrary to the true current state of affairs that the purported prediction is an obvious sham," but an investor nonetheless remains under a duty to exercise "common sense" to protect himself. *Id.*

A claim of fraud creates a "high risk of abusive litigation," *Twombly*, 550 U.S. at 569 n.14, and therefore must satisfy the stringent pleading standard of Fed. R. Civ. P. 9(b). At a minimum, the complaint must (1) specify the allegedly fraudulent statements, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. *Ind. State Dist. Council of Laborers v. Omnicare, Inc.*, 583 F.3d 935, 943 (6th Cir. 2009); *Frank v. Dana*, 547 F.3d 564, 570 (6th Cir. 2008). While mental states "may be alleged generally," Fed. R. Civ. P. 9(b), the allegations "must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made." *Coffey v. Foamex L.P.*, 2 F.3d 157, 162

(6th Cir. 1993); *Our Lady of Bellefonte Hosp., Inc. v. Tri-State Physicians Network, Inc.*, 2007 U.S. Dist. LEXIS 72286, at *16 (E.D. Ky. Sept. 27, 2007).

As discussed above, the plaintiff has failed to specify reasons that statements (1), (2), (4), (5), or (6) were fraudulent. "Statement" (7) is, again, not a misrepresentation at all but is instead properly viewed as an allegation in support of a conclusion that statement (3) was false. So statement (3) is the only one we need to consider any further, but (as indeed with all the alleged representations) the complaint completely fails to allege time and place. More importantly (and again, this is common to all the statements), it fails to allege that the plaintiff's reliance on the alleged statement was reasonable or justifiable. Accordingly all of Count II will be dismissed.

**C**

Count III of the complaint alleges negligent misrepresentation. Kentucky follows the Restatement in holding liable for pecuniary loss a person who, (1) in the course of his business or a transaction in which he has a pecuniary interest, (2) supplies false information for the guidance of others in their business transactions, if (3) he fails to exercise reasonable care or competence in obtaining or communicating the information and (4) the plaintiff justifiably relied on the information. *Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 580 (Ky. 2004); Restatement (Second) of Torts § 552(1). This tort requires an affirmative false statement; a mere omission will not do. *Associated Warehousing, Inc. v. Banterra Corp.*, 2009 U.S. Dist. LEXIS 54614 (W.D. Ky. June 24, 2009). *See also H.C. Smith Invs., L.L.C. v. Outboard Marine Co.*, 377 F.3d 645, 652-53 (6th Cir. 2004) (suggesting this point though not expressing it outright). Consequently we can eliminate immediately the possibility of grounding this tort in "statement" (7). Because negligent misrepresentation does not require allegations of fraud, Rule 9(b) does not apply.

However, as just discussed Brantley has failed to allege that he *justifiably* relied on Harris's statements. Accordingly the negligent misrepresentation claim will be dismissed.

**III**

For the reasons set forth above, the complaint will be dismissed without prejudice except as to the plaintiff's claim under KRS 292.320 relying on Harris's representation that Brantley's funds would be used to purchase equipment, and his claims under KRS 292.480. The punitive damages claim remains in the action as well. A separate order will effectuate this disposition.